**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LARRY L. LEA,**

           **Plaintiff,**

**-vs-**                                                            **Case No.  6:10-cv-205-Orl-22DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

### *I. BACKGROUND*

**A.**    **Procedural History**

Plaintiff filed for a period of disability and disability insurance benefits on July 10, 2007 (R.139), alleging an onset of disability on April 1, 2007, due to heart problems, chest pain, angina, bowel problems, torn rotator cuff, arthritis, diabetes, and depression. R. 35, 36, 39, 40, 42, 45, 217-

20. His application was denied initially and upon reconsideration. R. 88-95, 100-02. Plaintiff requested a hearing, which was held on January 15, 2009, before Administrative Law Judge Lisa B. Martin (hereinafter referred to as "ALJ"). R. 19. In a decision dated March 30, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-18. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 135. The Appeals Council denied Plaintiff's request on December 30, 2009. R. 1. Plaintiff filed this action for judicial review on February 3, 2010. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born March 1, 1964 (Tr. 139). He was 43 years old on his alleged onset date and 45 years old as of the ALJ's decision. R. 139. Plaintiff has a GED, and he has worked in the past as a realtor, truck driver, state park maintenance worker, and doing lawn mower repairs. R. 174-81.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of depression, shortness of breath, fatigue, anxiety, chest pain, a history of bypass surgery, diabetes mellitus, arthritis, back and shoulder problems, and allergies. R. 217-20. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from coronary artery disease, diabetes mellitus, arthritis, and depressive disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 11-13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work except he could not perform any left-shoulder above shoulder activities, nor engage in ladder, rope, or scaffold climbing, must avoid extreme cold/heat environments, and must avoid exposure to dangerous work hazards, including unprotected heights and exposed machinery, and only occasionally engage in ramp/stair climbing, balancing, stooping, kneeling, and crouching; he was

limited to routine uncomplicated low-stress work activities and work that did not require more than occasional required contact with co-workers, supervisors or the public. R. 14.

Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 17. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a pin clip fastener. R. 18. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 18.

Plaintiff now asserts two points of error. He argues that the ALJ erred by finding there were jobs that Plaintiff could perform in spite of certain mental limitations not included in the hypothetical to the ALJ. Plaintiff also argues that the Appeals Council erred by not giving new evidence from Plaintiff's psychiatrist controlling weight and finding that Plaintiff was disabled[1]. For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

---

[1] The vast majority of the medical evidence in the record concerns Plaintiff's physical problems. Plaintiff does not challenge the ALJ's determinations of his physical RFC or other findings based on the physical RFC.

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A. Whether the ALJ's hypothetical included all of Plaintiff's impairments**

Plaintiff contends that the ALJ's finding that Plaintiff could perform other work in the economy, based on the vocational expert's testimony, was not supported by substantial evidence and Plaintiff should have been found disabled. The Commissioner contends that the ALJ properly relied on the testimony of the Vocational Expert (VE) to find that Plaintiff had the RFC to perform other work in the national economy.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

At the hearing in this case, the ALJ asked the VE three hypothetical questions. R. 61-64. In the first two hypothetical questions, the ALJ included a limitation of "routine, uncomplicated low stress type of work" R. 61-62. Plaintiff argues that this limitation does not equal limitations in concentration, persistence or pace, citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004); *Karasky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). Plaintiff argues that none of the opinion evidence of record stated that "routine, uncomplicated, low stress" is equal to limitations in concentration, persistence or pace. Plaintiff contends that the ALJ erred in relying on VE testimony to his second hypothetical question when she found that jobs exist that Plaintiff can perform and that he is not disabled (R. 17-18).

The VE testified that if limited to "routine, uncomplicated, low stress" work, Plaintiff could perform work as a surveillance system monitor, assembler, and assembler of plastic hospital parts, and pin clip fastener (R. 61, 63); however, Plaintiff argues that all of these jobs require maintaining a certain degree of pace and repetition for which psychologists opined Plaintiff is "moderately" impaired, thus, he was precluded in his ability to perform these jobs.

Plaintiff argues that when the ALJ modified the hypothetical to include "distracted 30% of the time" (or "occasionally") (R. 64), the VE testified that there would be no jobs in unskilled work for such an individual because employers would not accept that. R. 64. Plaintiff argues that "distracted occasionally" is the way that the ALJ chose to incorporate Plaintiff's limitations in concentration, persistence or pace, and the ALJ erred in not relying on the VE's testimony that there would be no jobs Plaintiff could perform with that limitation of being "distracted . . . 30% of the time."[2]

The Commissioner argues that the ALJ's RFC finding and her hypothetical questions to the VE fully accounted for all of the limitations arising from Plaintiff's mental impairments. The Commissioner contends that the ALJ properly relied on the VE's testimony to find that Plaintiff could perform a significant number of jobs and, therefore, was not disabled, citing R. 17-18. The Commissioner contends that Plaintiff confuses what the ALJ must consider at different steps in the five step process; the ALJ considered the "moderate difficulties" maintaining concentration, persistence or pace in the Psychiatric Review Technique (PRT) at Steps Two and Three to determine that Plaintiff had a severe mental impairment, as she is required to do under 20 C.F.R. § 404.1520a(d)(1), (2). The Commissioner cites Social Security Ruling (SSR) 96-8p2 which states that the limitations identified in the "paragraph B" and "paragraph C" criteria of the mental disorders listings, as considered in the PRT (*see* R. 418-19), are not an RFC assessment but are used to rate the

---

[2]The Commissioner does not directly address this argument about the "distraction" limitation in the hypothetical in his memorandum.

severity of a claimant's mental impairment(s) at Steps Two and Three of the sequential evaluation process. SSR 96-8p; see also 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (describing paragraphs B and C of mental disorders listings).

In this case, because the ALJ found that Plaintiff did not meet a listing level of mental disorder (a finding unchallenged by Plaintiff), the ALJ went on to consider Plaintiff's mental RFC applying the reviewing psychologists' opinions from their Mental RFC Assessment forms. 20 C.F.R. §§ 404.1520a(d)(3), 404.1545, 404.1546(c); see also 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(a) ("The determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe. RFC is a multidimensional description of the work-related abilities you retain . . . ."). In a case cited by the Commissioner, *Martino v. Barnhart*, the Eleventh Circuit held that an ALJ "is not required to incorporate the 'B' criteria of the PRT in an assessment." Case No. 01-17085, 2002 WL 32881075, at *2 (11th Cir. 2002) (unpublished) (citing SSR 96-8p).

Because the ALJ, based on VE testimony, found that Plaintiff could not return to past relevant work with his physical and mental RFC, she proceeded to Step Five to determine whether Plaintiff could perform other work in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 404.1545(a)(5) (in determining whether a claimant can adjust to other work at step five, the ALJ considers the claimant's age, education, work experience, and RFC). The ALJ is only required to include the ALJ's RFC findings in her hypothetical. The regulations define the PRT's category of "concentration, persistence, or pace" as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in a work setting." 20 C.F.R. § 404.1520a; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(c)(3). The Commissioner argues that various factors can affect this broad functional category, such as an individual being able to sustain

attention and persist at simple tasks but having difficulty with complicated tasks, and the ALJ translated her PRT findings into work-related functions in the RFC assessment by finding that Plaintiff was limited to routine uncomplicated low-stress work that does not require more than occasional contact with co-workers, supervisors or the public. Doc. 16 (citing R. 14-17). The Commissioner also argues that the evidence of mental health treatment or disabling symptoms was sparse, supporting the ALJ's RFC findings.

In this case, at Steps Two and Three, the ALJ evaluated the severity of Claimant's mental impairment and determined Plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning. R. 13. "With regard to concentration, persistence, or pace, [Plaintiff] has moderate difficulties. The claimant is able to adapt as needed in work settings involving routine, low pressure adjustments. (Exhibit 11F3/3 [424])." R. 13. The ALJ went on to determine Plaintiff's mental RFC, specifically citing the Mental RFC Assessment of Christi Bruening, Ph.D., who opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, in carrying out detailed instructions, and in maintaining attention and concentration for extended periods. Dr. Bruening explained her findings in the Functional Capacity Assessment Conclusion section:

> Claimant alleges disability due to physical and mental difficulties. Limitations are reported in task completion, getting along with others, and stress tolerance. No history of mental health hospitalization. Claimant received outpatient counseling for three months in 2003, associated with bypass surgery. No current mental health treatment. File officer noted no difficulties with completing teleclaim.
>
> Consultative examination vendor noted deficits in attention, concentration, and recent memory; diagnosis is major depressive disorder, recurrent' GAF = 50. Vendor opined claimant's ability to understand/remember/carry out short, simple instructions as mildly to moderately impaired; concentration, persistence and pace and social functioning as moderately impaired; and stress tolerance as moderately to severely impaired.

> ADLs indicate claimant is able to drive, travel independently, shop manage money, prepare foods, maintain hygiene/grooming, care for pets. Claimant has a small engine repair business, mows lawn and performs household maintenance. needs no reminders for medication or grooming. Maintains daily phone contact with others, although he tends to isolate himself.
>
> Allegations of limitations are partially credible. MSS [medical source statement] is given great weight.
>
> Claimant is able to:
>
> A) understand and remember short, simple instructions;
> B) sustain attention for two-hour segments of time;
> C) tolerate minimal contact with co-workers and supervisors in a non-public setting;
> D) adapt as needed in work settings involving routine, low pressure adjustments.

R. 424 (dated October 4, 2007) (appropriate terms substituted for abbreviations).

The only other mental health notes in the record (from the period prior to Dr. Bruening's review in October 2008) is the consulting examination from Dr. Noelker, a licensed psychologist. R. 359-63. Dr. Noelker's Medical Source Statement – to which Dr. Bruening gave "great weight" in her assessment – was:

> Patient's ability to understand and remember simple one or two step instructions is mildly to moderately impaired. Patient's ability to sustain concentrations and persistence is moderately impaired. Social interactions have become moderately impaired of late. Patient's ability to adapt and respond to pressures normally found in day to day work activity is moderately to severely impaired.

R. 362. Dr. Noelker opined, based on his consultative examination, that Plaintiff was "moderately clinically depressed and is in need of formal psychological and/or psychiatric treatment." R. 362. As to his prognosis, Plaintiff was "not involved in current mental health care/treatment and though compliant with medication for somatic difficulties[3] there are no signs of progress with depression. As a result, duration of impairment at this time should be viewed as chronic." R. 362. Dr. Bruening

---

[3] Definition = exaggerated symptoms.

-9-

appropriately based her mental Residual Functional Capacity Assessment on Dr. Noelker's examination findings and the limitations that he identified.

> The ALJ accurately summarized the findings of reviewing psychologist, Dr. Bruening:
>
> On October 4, 2007, Dr. Christi Bruening, performed a mental residual functioning capacity assessment, which was adopted by Dr. Jay Athy, PhD. Dr. Bruening noted that the claimant is able to understand and remember short, simple instructions, sustain attention for two hour segments of time, tolerate minimal contact with co-workers and supervisors in a non-public setting, and adapt as needed in work settings involving routine, low pressure adjustments.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .
>
> [G]reat weight is given to Dr. Christi Bruening and Dr. Jay Athy. Their medical opinions are consistent with the medical evidence of record and demonstrate the appropriate mental functioning capacity of the claimant. Both doctors opined that the claimant can work in low stress jobs limiting contact with the public. (Exhibit 11F [Dr. Bruening's Mental RFC Assessment]).

R. 16.

Dr. Bruening accepted the limitations identified by Dr. Noelker (the CE), and applied those in assessing Plaintiff's mental RFC "in the context of the individual's capacity to sustain that activity over a normal workday and workweek on an ongoing basis, as the SSA form requires. R. 422-24. The ALJ in turn properly relied on Dr. Bruening's RFC assessment conclusions, which applied Plaintiff's mental impairments to specific work-related limitations in assessing his RFC. The ALJ's reliance on Dr. Bruening's RFC assessment was based on substantial evidence.

As to Plaintiff's contention that the ALJ erred in not finding Plaintiff was precluded from other work when "distraction of 30%" was included, the ALJ's reliance on Dr. Bruening's opinion that

Plaintiff could "sustain attention for two-hour segments of time[4]" (R. 424), which the ALJ specifically noted in her RFC finding (R. 16), was based on substantial evidence. Dr. Bruening opined that Plaintiff was not significantly limited in the ability to work in coordination with or proximity to others without being *distracted* by them." R. 422. Dr. Noelker did not specifically mention Plaintiff's susceptibility to "distraction" in his CE, although he did note Plaintiff's "ability to sustain concentration and persistence [was] moderately impaired." R. 362. Thus, the ALJ's failure to apply "distraction up to 30%" in the RFC assessment or rely on the VE's response to a hypothetical which included it as a limitation was based on substantial evidence.

### B. Review of the Appeals Council decision

Plaintiff contends that the Appeals Council erred in not reversing the ALJ's decision based on responses to a two-page non-SSA questionnaire from Dr. Parker (R. 530-31) submitted to the AC *after* the ALJ's decision. When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

Plaintiff argues that evidence he submitted to the Appeals Council from treating psychologist Dr. Parker (R. 530-31) is new because it was not available to the ALJ at the time of her decision and it is material because it would change the ALJ's decision to support a finding of disability:

---

[4] She opined that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods. R. 422.

-11-

Plaintiff argues that Dr. Parker's opinion is supported by records of his depression (R. 483, 486, 488), tiredness and lack of motivation (R. 483-84, 486), and problems socializing (R. 484). Plaintiff argues that evidence he submitted to the Appeals Council from treating psychologist Dr. Parker (R. 530-31) is new because it was not available to the ALJ at the time of her decision and it is material because it would change the ALJ's decision to support a finding of disability. Plaintiff contends that Dr. Parker's opinion deserves controlling weight as the treating psychologist, and it should outweigh the opinions of the non-examining state agency reviewing psychologists. R. 483-88. Under the facts of this case, the reviewing physicians did not have the benefit of Dr. Parker's treatment records from October to December 2008 when they performed their reviews in October and November 2007. R. 424 (Breuning), 457 (Athy). He argues that Dr. Parker's opinion is supported by records of his depression (R. 483, 486, 488), tiredness and lack of motivation (R. 483-84, 486), and problems socializing (R. 484).

Plaintiff's hearing before the ALJ was held on January 15, 2009. R. 527. Plaintiff first saw Dr. Parker on October 21, 2008, and saw her four more times for the next two months (only) through December 2008. R. 483-87. Although it does not appear that Plaintiff received any treatment from Dr. Parker in 2009, or beyond those first five appointments, she completed a questionnaire dated April 15, 2009, opining that Plaintiff had marked difficulties in several categories, which she opined existed before April 1, 2007. R. 530-31. Dr. Parker's opinion lists marked difficulties in social functioning and concentration, persistence or pace (R. 530), which Plaintiff argues would satisfy the criteria for Listing 12.04 and would necessitate a finding of disability[5]. 20 C.F.R. §404 Subpart P, Appendix 2. Plaintiff also cites other parts of the questionnaire which conflict with ALJ findings that Plaintiff

---

[5]Plaintiff also argues that Dr. Parker's opinion concerning Plaintiff's limitations in concentration, persistence or pace (R. 530) would lead to a finding of disability. The Court discussed above the ALJ's findings based on substantial evidence.

could do sedentary work, *i.e.*, working 8 hours a day, 5 days a week (R. 14). Dr. Parker's opinion indicates that Plaintiff is unable to complete a normal workday or workweek or work on a reliable or sustained basis 8 hours a day, five days a week. R. 530. The ALJ noted Dr. Parker's treatment notes from late 2008, but in those notes there was no discussion of "marked" limitations. The ALJ noted that Dr. Parker prescribed Prestigue, an anti-depressant during the course of treatment. R. 13. "Although the claimant alleges that he does not feel any difference while taking the medication, Dr. Parker noted that the claimant was alert and oriented to all spheres. Even though the claimant's mood was reported as depressed and affect flat, there was no evidence of a thought disorder or psychotic symptoms." R. 13. As discussed in the prior section, the ALJ found that there were no marked limitations, even given Dr. Parker's treatment notes. R. 14. Dr. Parker's post-hoc questionnaire responses dating back to April 2007 are not supported by her treatment notes (R. 483-87), which were adequately summarized by the ALJ.

Plaintiff argues that the AC erred in not considering Dr. Parker's questionnaire and/or remanding the case to the ALJ for consideration of the questionnaire from Dr. Parker. Plaintiff argues that the AC did not properly consider the questionnaire, but merely used boiler-plate language in denying review. R. 1-4. However, Plaintiff concedes that the AC listed the evidence it considered in denying review, which included Dr. Parker's April 15, 2009 questionnaire response. R. 4. Plaintiff's argument that the AC's "actual decision gives no indication that it actually considered Dr. Parker's opinion" is without merit. R. 1-4. The Appeals Council is not required to write an opinion explaining why it did not accept each piece of new evidence such as Dr. Parker's two page response on a non-SSA questionnaire, as long as it is clear that the evidence was included was part of the record. before it when it denied review because "[w]e have found no reason under our rules to review the Administrative Law Judge's decision." R. 1-4. Particularly in this case where the ALJ noted Dr.

Parker's treatment records from the pre-hearing period (October to December 2008), the AC could see that the ALJ was aware of Dr. Parker's notes and opinions in the medical records already submitted, the same information would have been the basis for her April 2009 opinion (by putatively reaching back to April 2007 – R. 531). Accordingly, substantial evidence in the record as a whole supports the Commissioner's decision.

## *IV. CONCLUSION*

The record in this case shows that Plaintiff health and lifestyle are affected by his ailments to some degree. The ALJ appropriately considered[6] these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 24, 2011.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[6]Plaintiff's multitude of ailments and limitations required detailed analysis and synthesis. The careful fact finding and resulting determination of RFC is precisely the role of the ALJ. It is not proper for the Court to re-weigh the interpretation of the limitations and their cumulative effects.